# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 09-CV-2967 (JFB) and Nº 08-CV-1426 (JFB)

_____

FITZ-ROY WRIGHT,

Petitioner,

VERSUS

JAMES T. CONWAY,

Respondent.

_____

**MEMORANDUM AND ORDER**
October 9, 2009

_____

JOSEPH F. BIANCO, District Judge:

Fitz-Roy Wright (hereinafter, "petitioner") petitions this Court *pro se* for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in Nassau County Court for one count of murder in the second degree, one count of attempted murder in the second degree, one count of assault in the first degree, one count of assault in the second degree, and one count of criminal possession of a weapon in the second degree.

Petitioner challenges his conviction on the following grounds, alleging that: (1) new evidence has been discovered that would have changed the result of the trial; (2) counsel was ineffective because he failed to investigate the aforementioned newly discovered evidence, did not move for a mistrial or curative jury instructions following an outburst from the victim's family in open court, and did not investigate, interview or call to the stand a potential eyewitness; (3) the presiding trial judge committed misconduct because his mental incompetence caused him to make prejudicial rulings against the petitioner; and (4) the prosecutor committed misconduct by making improper summation comments that shifted the burden of proof from the prosecution to the defense, mischaracterized testimony, and withheld exculpatory evidence. By petition dated July 1, 2009, petitioner seeks habeas relief from this Court.[1] For the reasons

_____

[1] Petitioner filed a nearly identical petition on March 31, 2009 (08-CV-1426). By order dated August 17, 2009, the Court construed the subsequently filed July 1, 2009 filing as an

set forth below, the Court finds that several of petitioner's claims are barred from review and, in any event, all of the claims fail on the merits. Accordingly, the petition is denied in its entirety.

## I. BACKGROUND

### A. Facts

Based upon a review of the petition and underlying record, the Court has set forth below a summary of the evidence presented at petitioner's trial.

### A. Evidence Presented by Prosecution

On August 17, 1990, petitioner arrived at 41 Park Avenue, Roosevelt, New York, the home of his wife, Sandra Wright ("Wright"). (Trial Transcript ("T.") 377.) Prior to petitioner's arrival at the house, he had a phone conversation with Wright during which she expressed her desire to obtain a divorce. (T. 374.) Upon arriving at the house on Park Avenue, petitioner was denied entrance to the house by his daughter. (T. 374.) Hearing the discussion downstairs, Wright decided to go downstairs and speak to the petitioner. (T. 374.) As Wright descended the stairs, she saw petitioner coming through the side entrance of the house and reaching for his waist. (T. 375.) Wright then "jumped from the stairs on to him, he pushed me off and I fell to the floor." (T. 375.) Petitioner proceeded to beat Wright in her head and face with the gun, saying "you are wicked, you are wicked and I am going to kill you." (T. 375.)

During the assault, Wright's brother

Chevy Chowfen ("Chowfen") came onto the porch to see what was going on, whereupon petitioner pointed the gun at Chowfen and told him, "if you don't turn back, I shoot you in you blood clot [sic]." (T. 378.) Chowfen then turned to leave and petitioner "fired two shots, one of the shots hit [Chowfen] in the back and he fell to the floor." (T. 378-79.) The bullet that hit Chowfen "went first in the left arm, then exit [sic] from the left arm, slightly above the elbow . . . and then entered on the left chest . . . [and] went into the lower portion of the left lung . . . made a hole in the aorta and then went further into the right lung." (T. 696-97.) The cause of Chowfen's death was "from bleeding due to perforation of his aorta and both lungs." (T.704.)

Following the shooting, Wright's mother, Navelette Woodburne ("Woodburne"), came out to the porch to see what had happened. (T. 464.) Petitioner then pointed the gun at Woodburne. (T. 464.) Petitioner then began to beat Wright again. (T. 464.) As he did, he said "all this time I have been killing you, you are not dead yet." (T. 379.) Woodburne then began hitting petitioner with a shopping cart to keep him from further beating Wright. (T. 465.) Petitioner then hit Woodburne twice with the gun. (T. 465.) Finally able to escape, Wright ran out of the house and into a neighboring yard. (T. 379-80.) Petitioner was not at 41 Park Avenue when the police responded. (T. 561.) Petitioner was apprehended on September 11, 1999 in Maryland. (T. 689.)

### B. Evidence Presented by Defense

The petitioner testified at trial and his testimony is summarized below.

Upon moving permanently to New York, petitioner moved into a room at 922 Henry

---

amended petition. In deciding this petition, the Court has considered all of petitioner's arguments in both filings.

Street, Uniondale, New York that Wright had rented for him. (T. 736-37.) In the room, petitioner found a gun while cleaning the nightstand drawer. (T. 778.) On the night of August 17, petitioner went to 41 Henry Street with his daughter's report card and the found gun. (T. 745.) Petitioner intended to give the gun to a friend who could sell it for him. (T. 797.)

When petitioner arrived at 41 Park Avenue, his daughter opened the door and ran upstairs. (T. 746.) Petitioner "playfully ran at her" and ran into Wright coming down the stairs. (T. 747.) Wright's hand then brushed the gun in petitioner's waistband and a struggle ensued for the gun. (T. 750.) During the struggle, Chowfen came to see what was happening. (T. 750.) Petitioner told Chowfen that Wright had a gun and Chowfen then began walking away. (T. 751.) As petitioner struggled with Wright for the gun, it was fired. (T. 751.)

After the gun fired, Woodburne came out and jumped on petitioner and Wright. (T. 752.) Woodburne then began to hit petitioner with something in her hand. (T. 754.) Petitioner attempted to put Wright between himself and Woodburne. (T. 755.) Woodburne then began hitting petitioner with a shopping cart with Wright in between them. (T. 756.) Woodburne eventually hit Wright with the shopping cart, knocking her off of petitioner. (T. 757.) Woodburne then put the shopping cart on petitioner's neck and began choking him. (T. 757.) Petitioner was able to free himself, and grab a bicycle that he used to strike Woodburne. (T. 757.) Petitioner then saw Chowfen lying on the ground. (T. 759.) Petitioner then went into the kitchen to get water for Chowfen. (T. 761.) While in the kitchen, petitioner thought to call emergency services. (T. 761.) Finally, petitioner heard footsteps coming from upstairs and left. (T. 763.)

B. Procedural History

On May 9, 2000, following a jury trial in the Nassau County Court, petitioner Wright was convicted of one count of murder in the second degree, one count of attempted murder in the second degree, one count of assault in the first degree, one count of assault in the second degree, and one count of criminal possession of a weapon in the second degree. Petitioner was sentenced on June 6, 2000 to an indeterminate term of imprisonment of 25 years to life on the murder conviction, an indeterminate term of imprisonment of 7 to 21 years on the attempted murder conviction, an indeterminate term of imprisonment of 4 to 12 years on the first degree assault conviction, an indeterminate term of imprisonment of 2 to 6 years on the second degree assault conviction, and an indeterminate term of imprisonment of 4 to 12 years on the weapon possession conviction. The murder, attempted murder and second degree assault sentences were ordered to run consecutively, while the first degree assault sentence was ordered to run concurrently with the second degree assault sentence and the weapon possession sentence was ordered to run concurrently with all of the sentences. Petitioner was also ordered to pay restitution totaling $4,324.

On July 1, 2005, petitioner, with the assistance of counsel, appealed from his judgment of conviction to the Supreme Court of the State of New York, Appellate Division, Second Department. Petitioner's brief contended, *inter alia*, that the prosecutor had committed misconduct by making improper summation comments that shifted the burden of proof from the prosecution to the defense. On January 30, 2006, petitioner filed a *pro se*

supplemental brief claiming that: (1) new evidence had been discovered that would have changed the result of the trial; (2) the presiding trial judge committed misconduct because his mental incompetence caused him to make prejudicial rulings against the petitioner; (3) counsel was ineffective because, *inter alia*, he failed to investigate the aforementioned newly discovered evidence, failed to move for a mistrial or curative jury instructions following an outburst from the victim's family in open court, and did not investigate, interview or call to the stand a potential eyewitness; and (4) the prosecutor had committed misconduct by, *inter alia*, mischaracterizing testimony and withholding exculpatory evidence.

On July 25, 2006, the Appellate Division affirmed the conviction. *People v. Wright*, 31 A.D.3d 798 (N.Y. App. Div. 2006). The Appellate Division ruled that the improper summation comment claim from the petitioner's counsel-assisted brief was unpreserved for appellate review and, in any event, without merit. As to the newly discovered evidence claim, the court ruled that it was not properly before the court on appeal. As to the judicial misconduct claim, the court ruled it was not properly before the Appellate Division as it relied on matters dehors the record, but to the extent that the claim was reviewable, it was without merit. As to the ineffective assistance of counsel claim, the court ruled, *inter alia*, that it too relied on matter dehors the record and was not properly before the court. As to the other prosecutorial misconduct claim based on mischaracterizing testimony, the court ruled that it was unpreserved for appellate review and without merit. The court did not specifically address petitioner's claim that the prosecutor withheld exculpatory evidence.

On August 2, 2006, petitioner, with the assistance of counsel, made an application for leave to appeal to the New York Court of Appeals asserting only the claims made to the Appellate Division in his counsel-assisted brief.[2] Thus, the only claim he presented to the Court of Appeals relevant for this habeas petition was that the prosecutor made improper summation comments that shifted the burden of proof. On October 25, 2006, the Court of Appeals denied petitioner's application for leave.

On November 15, 2005, while his direct appeal was still pending, petitioner filed a *pro se* motion to vacate his judgment of conviction with the Nassau County Court. Petitioner raised similar issues as in his supplemental brief to the Appellate Division: (1) new evidence had been discovered that would have changed the result of the trial; (2) counsel was ineffective because he, *inter alia*, failed to investigate the aforementioned newly discovered evidence, failed to move for a mistrial or curative jury instructions following an outburst from the victim's family in open court, and did not investigate, interview or call to the stand a potential eyewitness; (3) the prosecutor had committed misconduct by, *inter alia*, mischaracterizing testimony, and by withholding exculpatory evidence; and (4) the trial judge committed misconduct because his mental incompetence caused him to make prejudicial rulings against petitioner.[3] On July

[2] Petitioner has made no showing that he raised the issues in his *pro se* supplemental brief in his leave letter to the Court of Appeals.

[3] Petitioner raised his judicial misconduct claim in a supplemental filing on December 12, 2005. (*See* Respondent's Affirmation in Opposition to Defendant's Motion to Vacate Judgment, Jan. 20, 2006, at 17 n.11.)

3, 2007, the Nassau County Court denied petitioner's motion in its entirety on the merits.

On or about August 1, 2007, petitioner applied for leave to appeal to the Supreme Court of the State of New York, Appellate Division, Second Department. In his motion, petitioner only asserted the newly discovered evidence claim and his ineffective assistance of counsel claim insofar as counsel failed to investigate the aforementioned evidence. On November 29, 2007, the Appellate Division denied the application.

In the instant habeas petition, petitioner asserts four claims: (1) new evidence has been discovered that would have changed the result of the trial; (2) counsel was ineffective because he failed to investigate the aforementioned newly discovered evidence, did not move for a mistrial or curative jury instructions following an outburst from the victim's family in open court, and did not investigate, interview or call to the stand a potential eyewitness; (3) the presiding trial judge committed misconduct because his mental incompetence caused him to make prejudicial rulings against the petitioner; and (4) the prosecutor committed misconduct by making improper summation comments that shifted the burden of proof from the prosecution to the defense, mischaracterized testimony, and withheld exculpatory evidence.

## II. STANDARD OF REVIEW

To determine whether petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a

conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

## III. DISCUSSION

As set forth below, several of petitioner's claims are procedurally barred from review. In any event, as further set forth below, all of petitioner's claims are without merit.

### A. Procedural Issues

### 1. Failure to Exhaust

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 332 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them. *See Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan*, 513 U.S. at 365-66. "A petitioner has

'fairly presented' his claim only if he has 'informed the state court of both the factual and the legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Daye*, 696 F.2d at 191)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye*, 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276 and *United States ex rel. Cleveland v. Cassles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

## 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (additional citations omitted). Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are . . . to be considered exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) and *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, for exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Keane*, 118 F.3d at 139 (quoting *Hoke*, 933 F.2d at 120 (quoting *Harris*, 489 U.S. at 263 n.9)).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996), and *Coleman*, 501 U.S. 744-51). "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Netherland*, 518 U.S. at 162 (citations omitted).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect with which state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent procedural grounds. *See Coleman*, 501 U.S. at 729-33. The purpose of this rule is to maintain the delicate balance of federalism by retaining a state's rights to

enforce its laws and to maintain its judicial procedures as it sees fit. *Id.* at 730-31.

### 3. Application

Petitioner properly exhausted his newly discovered evidence claim and his ineffective assistance of counsel claim insofar as it relates to the aforementioned evidence. As set forth below, all of petitioner's other claims are procedurally barred from review.

Petitioner's ineffective assistance of counsel claim comprises three separate arguments: (1) counsel failed to investigate the possibility that petitioner had been shot during the altercation; (2) counsel failed to request curative instructions or move for a mistrial following an outburst from the victim's family in open court; and (3) counsel did not investigate, interview or call to the stand a potential eyewitness. Respondent does not raise a procedural bar issue with respect to petitioner's first argument, and the Court finds that petitioner properly exhausted his ineffective assistance of counsel claim regarding newly discovered evidence. While petitioner raised arguments (2) and (3) in his direct appeal to the Appellate Division, petitioner has not shown that he presented these claims to the Court of Appeals on direct appeal or to the Appellate Division in appealing the denial of his motion to vacate. Petitioner has thus failed to exhaust these claims. Because petitioner would now be barred from raising those issues in state court, *see* N.Y. Crim. Proc. Law §§ 460.15, 460.20, he has procedurally defaulted them. Because petitioner has not shown cause for or prejudice from the default, the claim is barred from review.

Petitioner raised his claim of judicial misconduct on his direct appeal to the Appellate Division and in his motion to vacate. However, petitioner omitted this claim from his motion for leave to the Court of Appeals on direct appeal and from his appeal upon denial of his motion to vacate. Therefore, petitioner failed to fully exhaust this claim, and because this claim would now be procedurally barred from state court review, *see* N.Y. Crim. Proc. Law §§ 460.15, 460.20, this Court finds that the claim is procedurally defaulted. Because petitioner has not shown cause for or prejudice from the default, his claim is barred from habeas review.

Petitioner raises three prosecutorial misconduct claims, all of which are barred from habeas review: (1) the prosecutor made improper summation comments regarding the absence of a possible defense witness that shifted the burden of proof from the prosecution to the defense; (2) the prosecutor mischaracterized witness testimony; and (3) the prosecutor withheld exculpatory evidence in violation of the holding in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). First, although petitioner raised his burden-shifting comment claim on direct appeal both to the Appellate Division and the Court of Appeals, the Appellate Division found that claim unpreserved for appellate review and without merit. *People v. Wright*, 31 A.D.3d at 798 (citing *People v. O'Henry*, 13 A.D.3d 470 (N.Y. App. Div. 2004)). Because petitioner failed to preserve it, that claim is barred on an independent and adequate state procedural ground. *See Coleman*, 501 U.S. at 731-32 ("Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance."). Petitioner has not shown cause for or prejudice from the default, and so

this claim is barred. Petitioner did not present his mischaracterizing testimony claim or his *Brady* claim to the Court of Appeals at all, nor did he raise them when he appealed the denial of his motion to vacate, and therefore petitioner has not fully exhausted them. Because petitioner would now be barred from raising these issues in state court, and has not shown cause for, or prejudice from, the procedural default, these claims are barred from habeas review as well.

In any event, in an abundance of caution, the Court has analyzed the merits of the procedurally barred claims (along with all other claims) and concludes that none of the claims provide a basis for granting habeas relief in this case.

### B. Review on the Merits

#### 1. Newly Discovered Evidence

Petitioner claims that, prior to the shooting of Chevy Chowfen, there was a struggle for the gun. (T. 437, 751.) Petitioner claims in his application that, during this struggle, Sandra Wright was holding the handle of the gun while he held the barrel, and the victim was standing behind him. Petitioner further claims that he told his trial counsel that he believed he was shot during the altercation, and that a wound in his abdomen was proof of the injury, but that counsel did not pursue this evidence. Following his conviction in 2000, petitioner underwent an x-ray exam at Downstate Correctional Facility which petitioner claims revealed a piece of bullet fragment from the altercation in 1990. Petitioner claims that this evidence proves that it would have been impossible for him to shoot the victim due to the fact that he was in front of the gun.

Newly discovered evidence is, by definition, incapable of discovery through counsel's due diligence before or during trial. Evidence in existence, though perhaps unknown to petitioner, cannot later be described as newly discovered. *See, e.g.*, *Hector v. Greiner*, No. 99-CV-7863 (FB), 2000 U.S. Dist. LEXIS 12679, at *5 (E.D.N.Y. Aug. 29, 2000); *see also United States v. Middlemiss*, 217 F.3d 112, 122 (2d Cir. 2000) ("Relevant factors to a successful motion [based on newly discovered evidence] are whether . . . counsel could not have discovered the evidence with due diligence before or during trial.").

Because petitioner's claim of newly discovered evidence was reviewed on the merits by the Nassau County Court in denying petitioner's motion to vacate, AEDPA deference applies and this Court must defer to the state court's decision unless it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Nassau County Court decided that, because petitioner told his counsel about the potential evidence prior to trial, "[d]ue diligence based upon this information, possessed by the defendant and told immediately to his attorney, could have uncovered a bullet fragment still lodged within the defendant's body." *People v. Wright*, Ind. No. 76046/1990, Motion No. C-483, at 2 (N.Y. County Court, Nassau County, June 25, 2007). According to the radiology exam, the x-ray revealed "7mmx3mm metallic fragments in soft tissues right lower lateral thorax." (Petition Exhibit B.) The x-ray does not state that the fragments are bullets, let

alone bullets from the 1990 shooting. The Nassau County Court also stated that the "speculative nature of this evidence supported only by the defendant's conjecture will not support a motion to vacate judgment." *People v. Wright*, Ind. No. 76046/1990, Motion No. C-483, at 2 (N.Y. County Court, Nassau County, June 25, 2007) (citing *People v. Session*, 34 N.Y.2d 254 (1974), *People v. Holmes*, 127 A.D. 2d 933 (N.Y. App. Div. 1987)).

This evidence of metal fragments in petitioner's abdomen cannot be characterized as new as it was both in existence and known to petitioner and his counsel prior to trial. Furthermore, petitioner's claim that this evidence is exculpatory is undercut by his failure to provide any supporting evidence such as hospital records showing treatment for the injury near the time of the shooting. Given that about nine years elapsed between the shooting and petitioner's apprehension, the probative value of this purported evidence is not apparent. The lack of probative value is especially glaring in light of the overwhelming evidence of the petitioner's guilt. In short, this purported "newly discovered evidence" claim is without merit and does not provide a basis for habeas relief.

### 2. Ineffective Assistance of Counsel

Petitioner's ineffective assistance of counsel claim contains three separate arguments: (1) counsel failed to investigate the possibility that petitioner had been shot during the altercation; (2) counsel failed to request curative instructions or move for a mistrial following an outburst from the victim's family in open court; and (3) counsel did not investigate, interview or call to the stand a potential eyewitness. This Court concludes that all three lack merit.

The Nassau County Court, in denying petitioner's motion to vacate, rejected each aspect of the ineffective assistance of counsel claim on the merits. Federal habeas relief therefore is not granted unless that state court's ruling was based upon "an unreasonable application of" federal law, or was "based upon an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The court stated that petitioner's claim was "insufficient." *People v. Wright*, Ind. No. 76046/1990, Motion No. C-483, at 2 (N.Y. County Court, Nassau County, June 25, 2007). The court neglected to explain the exact grounds for determining that these claims were unavailing. Therefore, this Court must determine whether that decision was an "'unreasonable application' of clearly established Supreme Court precedent." *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001).

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 688 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the

reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Greiner*, 417 F.3d at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 389 (2005)). In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "'A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision,' *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (citing *Strickland*, 466 U.S. at 690-91). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that it "undermines confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "[T]he question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of Strickland, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

This Court proceeds to examine each prong in turn, keeping in mind that a habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, petitioner's claims, taken alone or together, fail to satisfy either element.

a. Failure to Investigate Evidence

There is insufficient evidence in the record to support petitioner's claim that counsel was deficient for failing to investigate the possibility that petitioner was shot during the altercation. As the Nassau County Court held, petitioner "merely points to unsworn reports and his own conjecture that more could have been done on his behalf." *People v. Wright*, Ind. No. 76046/1990, Motion No. C-483, at 2 (N.Y. County Court, Nassau County, June 25, 2007). There is no corroboration that counsel failed to investigate such a possibility beyond the mere claim of the petitioner. Furthermore, if counsel decided not to investigate the possibility of such evidence, that decision can be explained as "sound trial strategy." *Strickland* 466 U.S. at 689-90. Given the nine years between the shooting and petitioner's apprehension, counsel's decision could easily have been based on a determination regarding

the difficulty of proving that the injury claimed occurred during the shooting and not at some other point in time. It is reasonable to infer that counsel chose to allocate his resources to investigate more promising defenses rather than one that he determined would, at best, yield evidence with low probative value. Therefore, there is no reason to believe that the representation "fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687-88. In any event, given the overwhelming evidence of petitioner's guilt, petitioner has failed to show that the result of the proceeding would have been different but for counsel's failure to investigate evidence. Petitioner's claim is therefore without merit.

### b. Counsel's Failure to Move for Mistrial or Curative Instructions

Petitioner contends that his counsel was ineffective for failing to move for a mistrial or request curative instructions after an outburst from the victim's family in open court. The record contains the following exchange at sidebar:

> The Court: There are several people in the front row on the far right of the courtroom looking from the bench. I believe they were making comments or sounds during the defense counsel's opening statement. I am now going to please admonish you, do not let there be a repetition or else these people will have to be excluded from the courtroom. They must obey the rules of conduct in a courtroom.

> Ms. Watson [Prosecutor]: Certainly, Judge. I spoke to all

of them before. They are under stress for the significance and seriousness of this.

> The Court: This is very serious. Okay. I will let the jury go and then we will proceed tomorrow. Thank you. (T. 351.)

According to petitioner, prior to the cited exchange, "a family member of the victim made a loud piercing sound that lasted between five and ten seconds." (Petitioner's Application, July 1, 2009 (hereinafter "Petition"), at 11) A few moments later, someone in the audience "shouted to the jury 'Don't listen to him' . . . 'Fitz is guilty, Fitz is guilty put him in prison.'" (*Id*. at 12.) The petitioner goes on to argue that the outburst had an emotional impact on at least two members of the jury. "One female member of the jury sitting in the front row started drying the tears that had welled up in her eyes. While another male member of the jury, sitting next to the young lady, placed his hands over his ears and then placed his head on the desk in front of him." (*Id*.) These statements, however, appear only in petitioner's application for habeas corpus, and not in the record or the state's opposition to the petitioner's application. According to respondent, "the comments themselves are not contained in the record, and their nature is unknown. Thus, this Court does not have an adequate factual basis upon which to review defendant's claim." (Respondent's Supplemental Brief to the Appellate Division, Mar. 10, 2006, at 6.). The Nassau County Court, in deciding against the motion to vacate, reviewed the claim on the merits stating that "the petitioner's additional allegations of ineffective counsel are equally unavailing." *People v. Wright*, Ind. No. 76046/1990, Motion No. C-483, at 2 (N.Y. County Court, Nassau

County, June 25, 2007) (Honorof, J.) (citing N.Y.C.P.L. §440.10[2][b]).

Under *Strickland*, petitioner must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. Because the alleged comments in the outburst are not part of the record, it is impossible to say whether counsel was deficient for failing to request curative instructions or a mistrial. Petitioner makes no showing through supporting affidavits or otherwise that the outburst occurred in the way he describes. Even if petitioner's account were taken as true, petitioner has not shown that counsel's performance was deficient. Counsel's failure to do so could easily have stemmed from a reluctance to further highlight any outburst that may have occurred, and may be characterized as "sound trial strategy." *Strickland*, 466 U.S. at 689-90. Petitioner also has not shown, in light of the evidence of his guilt, that had counsel successfully moved for a mistrial or asked for a curative instruction, the result of the proceeding would have been different. *See Coleman v. Giles*, 140 F. App'x 895, 899-901 (11th Cir. July 25, 2005) (affirming denial of habeas petition on ground of no showing of prejudice where petitioner alleged an emotional outburst from the victim's grandmother, where counsel failed to request a mistrial, and where the court issued no immediate curative instructions). Petitioner's claim is therefore without merit.

### c. Failure to Call a Witness

Petitioner further contends that his counsel was ineffective because he failed to call to the stand, or to investigate, a witness that would have corroborated petitioner's version of the shooting. (Petition at 11.) Petitioner explained in his Motion to Vacate that his biological daughter, Tamara Wright, was present at the time of the shooting, and that her testimony would have "corroborated his trial testimony, that he did not shoot Mr. Chowfen, that Mr. Chowfen was behind him when he was shot and that gun was discharged during the struggle with Ms. Chowfen." (Petitioner's Motion to Vacate, Nov. 15, 2005 (hereinafter, "Motion to Vacate"), at 31-32.)

The decision to call, or not call, a witness is a classic example of strategy. "The tactical decision of whether to call a specific witness – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation." *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997), *cert. denied*, 522 U.S. 846 (1997); *see also United States v. Romero*, 54 F.3d 56, 60 (2d Cir. 1995). However, unexplained failures to call credible alibi witnesses cannot be considered reasonable trial strategy. *See Pavel v. Hollins*, 261 F.3d 210, 226 (2d Cir. 2001). Moreover, the failure to investigate potential alibi witnesses is particularly egregious. *See id.* at 220-22 & nn.13-14; *see also Lindstadt v. Keane*, 239 F.3d 191, 199-204 (2d Cir. 2001).

Petitioner has failed to show that counsel's performance was deficient, as opposed to sound trial strategy. Counsel may very likely have concluded that the testimony of petitioner's daughter was not quite as exculpatory as the petitioner claims, or even worse, that her testimony may actually have been quite damaging to petitioner's case. Moreover, in order to rise to the level of being ineffective, that decision must result in prejudice to the defendant. Petitioner has failed to provide an affidavit from Tamara Wright showing what her testimony actually is or would have been. *See Schulz v. Marshall*, 528 F. Supp. 2d 77, 96 n.13 (E.D.N.Y. 2007)

("In evaluating claims of ineffective assistance of counsel based on failure to investigate witnesses, courts place weight on a defendant's ability to show that these witnesses would have had helpful information.") (collecting cases). Therefore, petitioner has not shown that counsel's failure to call to the stand or investigate the witness was deficient representation, or that it resulted in prejudice to petitioner. This Court finds petitioner's claim to be without merit.

Thus, for the reasons set forth above, the Court finds that all of petitioner's ineffective assistance of counsel claims are without merit.

### 3. Judicial Misconduct

Petitioner alleges that Judge Paul E. Kowtna committed judicial misconduct during his criminal trial. According to petitioner, "[Judge Kowtna] was delusional before [the] trial had started yet he tried [the] case and made a number of rulings" that led to petitioner's conviction. (Petition at 16.) To support this claim, petitioner states that days after the trial ended Judge Kowtna stabbed his wife in the back twice. Moreover, Judge Kowtna pled not responsible by reason of mental disease or defect. Petitioner argues that Judge Kowtna was suffering from his mental illness during the trial, and this mental illness led Judge Kowtna to make several improper rulings.

To establish that a judge has engaged in misconduct sufficient to warrant habeas relief, petitioner must show that the judge demonstrated "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Litkey v. United States*, 510 U.S. 540, 555 (1994); *see also Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (in order to succeed on a judicial misconduct claim, a party must

"overcome a presumption of honesty and integrity in those serving as adjudicators"). In reviewing a judicial misconduct claim, courts are to presume that public officials have properly discharged their official duties. *See Bracey v. Gramley*, 520 U.S. 899, 909 (1997). Furthermore, a habeas petitioner must demonstrate that the trial judge engaged in conduct so "fundamentally unfair" that it violated the due process requirements of the United States Constitution. *See Daye v. Attorney Gen. of N.Y.*, 712 F.2d 1566, 1570-71 (2d Cir. 1983); *Salahuddin v. Strack*, No, 97-CV-5789, 1998 WL 812648, at *8 (E.D.N.Y. Aug. 12, 1998). Without this violation, "undesirable" conduct on the part of the judge is not enough. *See Daye*, 712 F.2d at 1572. Proving judicial misconduct is no simple task. *See Buckelew v. United States*, 575 F.2d 515, 518 (5th Cir. 1978) (there was no due process violation where the judge was physically ill during part of the trial, and fell asleep) ("Since we are told no specific error resulting from the trial judge's alleged physical condition, a due process violation has not been made out. It is not error to be ill.").

Moreover, in the Second Circuit, "the habeas petitioner faces a high burden to show a constitutional deprivation when the interference of the state trial judge is at issue." *A.S. Goldmen, Inc. v. Phillips*, 05-CV-4385, 2006 WL 1881146, at *40 (S.D.N.Y. July 6, 2006). "A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree before the risk of either impaired functioning of the jury or lack of the appearance of a neutral judge conducting a fair trial exceeded constitutional limits." *Daye v. Attorney Gen. of N.Y.*, 712 F.2d 1566, 1572 (2d Cir. 1983); *see also Reid v. Phillips*, 04-CV-1338, 2004 WL 1920218, at *4 (S.D.N.Y. Aug. 26, 2004) ("A criminal

defendant faces a high hurdle to establish a judge's partiality based on comments made at trial.").

The Appellate Division and the Nassau County Court both ruled on the merits that there was no support for a claim of judicial misconduct. Therefore, AEDPA deference applies. The state courts, after reviewing both the record and petitioner's arguments, found that petitioner had failed to establish that "the trial judge was suffering from any mental incapacity during the trial." *People v. Wright*, 31 A.D. at 799; *People v. Wright*, Ind. No. 76046/1990, Motion No. C-483, at 2 (N.Y. County Court, Nassau County, June 25, 2007).

Petitioner argues that Judge Kowtna made several rulings that violated his constitutional right to a fair trial. First, petitioner claims that several photos were allowed into evidence that were gained through a warrantless search and that only served to inflame the jury. Second, petitioner alleges that dismissing the jury after an outburst in court, without first determining if that jury could remain impartial, was misconduct. The Court addresses each issue in turn.

One of the pictures, photograph 46, depicts the condition of a rented room petitioner was staying in immediately prior to the murder of Chevy Chowfen. (T. 924.) The picture depicts, among other things, clothing left behind by the petitioner. Counsel for petitioner argued to Judge Kowtna that "the only reason why the People want to use this is for prejudicial value." (T. 924.) Counsel went on to argue that "[petitioner] already said he left the pants [and] the only basis for putting this photograph in is to inflame the jury." (T. 925.) Despite the objection, however, Judge Kowtna allowed the photo into evidence. There is nothing to suggest the admission of

the photograph was erroneous, or that it was based upon judicial bias or misconduct.

The court ruled differently with respect to photograph 47, which contained "what appears to be bullets," "a prescription bottle," and illustrated, according to the prosecution, "[the] immediacy and haphazard nature" of petitioner's flight. (T. 923.) Photograph 47, which clearly had inflammatory items not present in photograph 46, was rejected by Judge Kowtna. (T. 924.) Such balancing with regard to the photos clearly indicates careful consideration of these issues by the court and there is no evidence of judicial misconduct or bias with respect to these rulings. Thus, this Court finds that there was no judicial misconduct relating to the admission of the photographs.

Petitioner also argues that Judge Kowtna's actions in relation to the outburst in open court during opening statements constituted judicial misconduct. After the outburst, Judge Kowtna admonished the prosecution at sidebar, stating, "I am now going to please admonish you, do not let there be a repetition or else these people will have to be excluded from the courtroom. They must obey the rules of conduct in a courtroom." (T. 351.) Judge Kowtna then dismissed the jury for the day. Given that the exact nature of the outburst is not contained in the record, and petitioner has provided no evidence about the nature of the outburst beyond his allegation, petitioner has not shown that it was error for the judge not to give curative instructions or declare a mistrial, nor has he shown any judicial bias or misconduct with respect to that decision.

In sum, petitioner has failed to demonstrate any judicial misconduct or bias by the trial judge. There is absolutely no evidence

that Judge Kowtna was displaying "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Litkey v. United States*, 510 U.S. 540, 555 (1994). In fact, there is no evidence of favoritism or antagonism whatsoever, nor is there any evidence of erratic behavior or unusual behavior by the judge during the trial. In short, this Court finds that the judicial misconduct claim is without merit.

### 4. Prosecutorial Misconduct Claim

Petitioner's claim of prosecutorial misconduct contains three separate arguments: (1) the prosecutor made improper summation comments regarding the absence of a possible defense witness that shifted the burden of proof from the prosecution to the defense; (2) the prosecutor mischaracterized witness testimony; and (3) the prosecutor withheld exculpatory evidence in violation of the holding in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). This Court finds them all to be without merit.

### a. Improper Summation Statements Regarding the Burden of Proof

As set forth below, there is no basis to conclude that any of the challenged remarks by the prosecutor during summation warrant habeas relief, especially when considered in the context of the entire trial.

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 647 (1974)). For a claim of prosecutorial misconduct to suffice to establish a claim of constitutional error, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and quotation marks omitted). "There must instead, be a showing that '[petitioner] suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Alexander v. Phillips*, 02 Civ. 8735 (SAS)(FM), 2006 U.S. Dist. LEXIS 8926, at *40-41 (S.D.N.Y. Feb. 21, 2006) (quoting *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994)); *see also Dawkins v. Artuz*, 152 F. App'x 45, 46-47 (2d Cir. Oct. 17, 2005) ("To warrant granting the writ, the prosecutorial misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Darden*, 477 U.S. at 181) (citations omitted)). [N]ot every trial error or infirmity which might call for the application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly*, 416 U.S. at 642 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). The Court must then review such comments by a prosecutor narrowly to determine whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642).

To overcome this burden, petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during [testimony and/or] summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) (quoting *Darden*, 477

U.S. at 181). Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prosecutorial conduct." *Id.*; *accord United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004). "In addition, in determining whether a prosecutor's conduct was unconstitutional, a court 'must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's [remarks] . . . . If the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.'" *Everett v. Fischer*, No. 00 Civ. 6300, 2002 WL 1447487, at *2 (E.D.N.Y. July 3, 2002) (quoting *United States v. Young*, 470 U.S. 1, 13-14 (1985) (alterations in original)).

Petitioner takes issue with three statements on this point. The prosecutor made the following statements during summation, each of which was followed by a defense objection sustained by the trial court:

(1) "He [the petitioner] tells you he is going to give the gun to Desmond Louis to sell. Well, where is the evidence? The defendant put on a case. Where is the evidence to corroborate that part of his story?" (T. 973.)

(2) "[W]hat do we know about Desmond? We know his name, there is nothing whatsoever in the record to support even the existence of Desmond Louis. Do we even know he exists? If he does exist, do you really think he is going to say or that

in fact, there was any kind of a meeting?" (T. 973.)

(3) "Sonjie, his daughter. His natural daughter. Not Sandra's daughter. 22 years old today, meaning in the year 2000. What might she have been able to provide concerning what happened there? Why wasn't the defendant's daughter called by him? (T. 977.)

The Appellate Division reviewed this claim on the merits, and so AEDPA deference applies. The question for this Court is whether the prosecutor's statements extend beyond error and into the realm of egregiousness that violates petitioner's due process rights. First, the Court concludes that the three improper statements were not sufficiently severe as to warrant habeas relief, especially when considered in light of the other factors. *Compare Floyd v. Meachum*, 907 F.2d 347, 348, 353-55 (2d Cir. 1990) ("This is one of those rare cases where the improper comments in a prosecutor's summation were so numerous and, in combination, so prejudicial that a new trial is required.") (holding that dozens of improper statements made during both opening and closing statements were severe). The comments here were isolated and brief, and the trial court minimized any prejudice by the instructions that were given to the jury, as discussed below.

Under the second prong of the prejudice analysis, the court sustained defendant's objections to the statements at issue and clearly explained the burden of proof in jury instructions after summations. *See United States v. Walker*, 835 F.2d 983, 989 (2d Cir. 2005) ("When such a [burden-shifting] comment has been made, the court should

sustain, not overrule, the defendant's objection, and it would be well advised to caution the government against making such arguments and to make a precautionary statement directly to the jury that the defendant has no such obligation. Nonetheless, the trial court's instructions to the jury at the close of the summations were entirely proper.") (affirming conviction where trial judge overruled defendant's objection and did not give any immediate curative instruction). Here, the court sustained defendants objections, and, during jury instructions after summation, reminded jurors that the arguments and remarks of counsel are not evidence. The court instructed the jury: (1) that the defendant has no obligation to offer evidence in his defense, and if he elects not to, the jury may draw no inference from such election (T. 1007); (2) that the arguments of counsel, including summations, are not evidence (T. 1002); (3) that the jury must determine for themselves the truthfulness and accuracy of the testimony of each witness (T. 1006); and (4) that before the jury can find the defendant guilty of a crime, the prosecutor must prove beyond a reasonable doubt every element of the crime, and that this burden never shifts from the prosecutor to the defendant. (T. 1007-08.) This Court finds that the measures taken by the state trial court were sufficient to eliminate any potential prejudice from the prosecutor's statements.

Finally, under the third prong of the prejudice analysis, petitioner has failed to show that his conviction was uncertain absent the challenged prosecutorial conduct. As the Second Circuit has noted, "[o]ften, the existence of substantial prejudice turns upon the strength of the government's case: if proof of guilt is strong, then the prejudicial effect of the comments tends to be deemed insubstantial; if proof of guilt is weak, then improper statements are more likely to result in reversal." *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981); *see also Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) (holding that review of a habeas corpus challenge based upon prosecutorial misconduct includes consideration of "whether the conviction was certain absent the prejudicial conduct"). *See Bentley*, 41 F.3d at 825 (finding harmless error and a failure to demonstrate a substantial or injurious effect where there was "compelling evidence in the prosecution's case . . . [and] the prosecutor's summation comments were both brief and isolated."); *see also Bradley v. Meachum*, 918 F.2d 338, 343 (2d Cir. 1990) ("The clear evidence of guilt demonstrates that [petitioner] was not prejudiced by the prosecutor's improper remarks.").

In sum, in light of all of the factors – including the overwhelming evidence of guilt at trial, the brief and isolated nature of the objectionable comments, and the Court's instructions to the jury – this Court finds that the prosecutor's summation statements regarding the burden of proof did not cause the petitioner to suffer any actual prejudice that would have had an injurious effect or influence on the jury's verdict. Accordingly, there is no basis for habeas relief on this prosecutorial misconduct claim.

b. Mischaracterizing Witness Testimony

Petitioner further contends that the prosecutor mischaracterized witness testimony during summation.[4] The Appellate Division

_____

[4] Petitioner's only reference to this claim in his habeas petition is as follows: "The prosecutor became an unsworn expert witness testifying to facts that were not part of the people's witnesses['] testimon[y]." (Petition at 19-20.) Assuming *arguendo* that petitioner has in fact raised any

found this claim to be without merit, and so this Court applies AEDPA deference.

The prosecutor stated during her summation:

> Now, Miss Wright, did she testify that it [the gun] was at his back? Yes, ladies and gentlemen. And think about that. As the defendant is bringing up the gun yes Chevy is turning, turning, turning his back towards Mr. Wright. Towards the defendant, and as far as Sandra knows, when she sees the blast, just as she would have seen the blast when it went into the wall. As she sees the blast what is it she finally sees. She sees her brother's back. (T. 980.)

Petitioner alleges that Sandra Wright never made these statements during her testimony, but rather that the prosecutor was, in effect, purposely mischaracterizing this testimony to bolster the State's case.

The trial record does contain testimony by Sandra Wright that mirrors the information offered by the prosecutor during summation. Wright testified that "Chevy turned back and as soon as he turned back, he fired two shots, one of the shots hit Chevy in the back and he fell to the floor." (T. 378-79.) The statement made by the prosecution during summation is a fair representation of the evidence as it was presented to the jury. Even if the prosecutor

had mischaracterized the testimony, the evidence of petitioner's guilt was overwhelming, and, therefore, there is no showing of actual prejudice to petitioner. *See, e.g.*, *Pilgrim v. Keane*, 97-cv-1516 (SJ), 2004 U.S. Dist. LEXIS 27480, at *7-8 (E.D.N.Y. Aug. 9, 2004) ("Even if some of the prosecutor's . . . statements were improper, . . . they were not so egregious as to cause 'substantial prejudice' that denied Petitioner his right to a fair trial. The jury heard ample evidence placing Petitioner at the scene of the crime and directly linking him to the murder. Accordingly, this Court finds that Petitioner has not shown that he was denied a fair trial, since 'it can fairly be said that [his] conviction [] [was] the result of the jury's assessment of the evidence, not the result of improper argument by the prosecutor.'") (alterations in original) (citing *United States v. Nersesian*, 824 F.2d 1294, 1328 (2d Cir. 1987)).

Both the testimony and the prosecutor's summation statement have the victim turning away from the petitioner and the gun, both have Sandra Wright witnessing the events as they unfold, and both contain information that two shots were fired. Therefore, any error did not rise to the level of a constitutional violation. In any event, given the overwhelming evidence of petitioner's guilt, petitioner has failed to show prejudice from the prosecutor's remarks. The Court therefore finds that petitioner's claim is without merit.

### c. Withholding Evidence

Petitioner further claims that the prosecution withheld exculpatory evidence in direct violation of *Brady v. Maryland*, 373 U.S. 83 (1963). According to petitioner, the prosecution had in its possession an x-ray

---

claim with respect to this issue, the Court's analysis considers the arguments regarding mischaracterization of testimony petitioner made in his motion to vacate. (Motion to Vacate at 40-41.)

showing bullet fragments in his stomach. Petitioner contends that the prosecution failed to turn the x-ray over to the defense both before and during trial. (Petition at 21-22). The Nassau County Court rejected this claim on the merits as "unsupported by anything other than defendant's speculation." *People v. Wright*, Ind. No. 76046/1990, Motion No. C-483, at 2-3 (N.Y. County Court, Nassau County, June 25, 2007), and so AEDPA deference applies.

Under *Brady*, the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. In order to prevail on a *Brady* claim, petitioner must demonstrate that material evidence favorable to his case was not disclosed to him. *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) ("[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."). "Such evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Failure to disclose such material evidence merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *Bagley*, 473 U.S. at 678). Furthermore, "[t]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

In order to prove that there has been a *Brady* violation, petitioner must establish both that the prosecution did indeed possess the x-ray, and that the x-ray contained information that would have changed the outcome of the trial. Petitioner points to several communications that attempt to establish that the prosecutor had possession of the x-ray. First, he points to a letter dated September 25, 1999 from a Dr. Martin Roginsky that petitioner asserts demonstrates that the x-ray was given to the Nassau County District Attorney's Office prior to the start of his criminal trial. (Petition at 42, Exhibit.) However, this letter lacks any indication that it was sent to the District Attorney, or any mention of metal fragments in petitioner's stomach. In any event, even if the District Attorney had possessed this x-ray, the information found on it would not create "a reasonable probability that . . . the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280-81. The only document petitioner points to that references metal fragments in his stomach is an August 2, 2000 radiology report (Petition Exhibit B), which was issued after petitioner's conviction and did not identify the fragments as bullets, let alone bullets from the 1990 shooting. In short, this Court finds that there is no *Brady* violation upon which to grant habeas relief.

In sum, having carefully analyzed all of petitioner's claims in both petitions (08-CV-1426 and 09-CV-2967), the Court concludes that the state court decisions on the issues raised by petitioner were not contrary to, nor an unreasonable application of, clearly established federal law, and all of the claims lack merit and do not provide any ground for habeas relief. Accordingly, the habeas petition must be denied.

### III. Conclusion

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Therefore, the petition for a writ of habeas corpus is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. 2253(c)(2). The Clerk of the Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 9, 2009
Central Islip, New York

\* \* \*

Petitioner appears *pro se*. The attorney for respondent is Kathleen M. Rice, District Attorney of Nassau County, by Tammy J. Smiley, Esq., Laurie K. Gibbons, Esq., Assistant District Attorneys, 262 Old Country Road, Mineola, New York, 11501.